UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

GLEN ALLEN TRUSTY,           )
                             )
    Plaintiff,           )           Civil Case No.
                             )           5:20-cv-26-JMH
v.                           )
                             )           **MEMORANDUM OPINION**
KILOLO KIJAKAZI,             )               **AND ORDER**
ACTING COMMISSIONER OF SOCIAL )
SECURITY,                    )
                             )
    Defendant.           )

*** 

In December 2016, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability as of June 1, 2016. [Tr. 230, 237]. After an administrative hearing was held in May 2019, [Tr. 40-92], an ALJ issued a decision the following month, on June 24, 2019, that Plaintiff was not disabled under the Act. [Tr. 26-39]. The Appeals Council then declined Plaintiff's request for review, [Tr. 1-7], making the ALJ's June 24, 2019, decision the final agency decision for purposes of judicial review by this Court. 20 C.F.R. § 422.210(a). This appeal followed and the case is ripe for review, pursuant to 42 U.S.C. § 405(g), after being fully briefed. [DE 14; DE 16].

Plaintiff was 55 years of age at the time of his alleged disability onset date in June 2016. [Tr. 230]. He has a twelfth

grade (high school) education. [Tr. 256]. In his application materials, he initially alleged he was unable to work due to his neck, back, and chronic obstructive pulmonary disease ("COPD"). [Tr. 255]. He reported that he stopped working on June 1, 2016. [Tr. 255].

Plaintiff has restricted his arguments to the issues specifically discussed below. [DE 14-1, at 3-9]. Therefore, the Court shall not provide a recitation of the medical and other evidence not at issue in the case before the Court and discusses the evidence before the ALJ only to provide context or as to those issues specifically argued by Plaintiff.

Relevant medical evidence shows Plaintiff underwent a right distal clavicle resection and shoulder arthroscopy in July 2018 at a Veteran's Affairs ("VA") Medical Center. [Tr. 2233]. At a post-operative follow up two weeks after surgery, Plaintiff reported his pain was gone and that he was doing well. Physical therapy was recommended by the VA provider. However, Plaintiff said could not afford the drive and would rather not go since he was doing well. [Tr. 2421].

Plaintiff has had subsequent treatment for carpal tunnel and ulnar nerve compression. In January 2019, an X-ray of Plaintiff's right wrist and elbow resulted in an impression of an essentially unremarkable examination. [Tr. 2210]. Also in January 2019, Plaintiff specifically reported to a VA medical provider that he

spends his time watching movies and making shelves and other small items. [Tr. 2360].

A March 21, 2019, VA record indicates that compression of the ulnar nerve at the right elbow was electrophysiologically moderate, that same record also reflects, that on exam, Plaintiff's right elbow showed no visible deformity, had full active range of motion, and *only mildly* positive tinels at the cubital tunnel. The VA record further notes that that compression of the median nerve at both wrists (carpal tunnel syndrome) was electrophysiologically mild. [Tr. 2229]. Nevertheless, in late April 2019, a VA provider performed right carpal tunnel and cubital tunnel releases on Plaintiff. [Tr. 2221].

In March 2017, Barry Burchett, M.D., performed a consultative physical examination of Plaintiff with associated diagnostic studies involving his complaints. [Tr. 436-446]. Dr. Burchett noted that Plaintiff's chief complaint was his back, right arm, neck, and breathing. [Tr. 436)]. Dr. Burchett's physical examination was largely unremarkable other than significant limitations in Plaintiff's right shoulder range of motion. As relevant here, Dr. Burchett specifically noted that Plaintiff demonstrated normal grip strength, normal wrist and elbow range of motion, and no complaints of wrist or elbow pain. Plaintiff's elbows and wrists were non-tender, with no swelling, atrophy, or tenderness. Dr. Burchett further noted that Plaintiff was able to

write and pick up coins with either hand without difficulty, demonstrated normal 5/5 grip strength, and normal flexion extension of his elbows. [Tr. 436-441]. Dr. Burchett did not set forth specific functional limitations.

During the current administrative proceedings, in August 2017, State agency physician Sudhideb Mukherjee, M.D. opined that Plaintiff was able to perform medium exertion work related activities with additional postural, manipulative, and environmental limitations. [Tr. 121-123].

At the administrative hearing below, Plaintiff testified that he was 58 years of age. [Tr. 50]. Plaintiff then testified as to his past work activities and that he last worked in June 2016 due to difficulty sitting and standing. [Tr. 50-64]. In additional testimony, Plaintiff described his alleged impairments, symptoms, and associated treatment. [Tr. 64-76]. Plaintiff testified that he could stand ten minutes or walk about 500 feet at a time. [Tr. 68]. Plaintiff said that he continued to smoke cigarettes despite being advised to quit by medical providers. [Tr. 69]. He also said that he had right shoulder surgery in June 2018, could not reach up, and if he picked up a gallon of milk, he had to use both hands. [Tr. 69]. Plaintiff testified that he drops things and that he was post-surgery on his right upper extremity with his stiches to be removed the following day. [Tr. 70]. He also said that he had recently been diagnosed with depression and anxiety. [Tr. 73].

4

However, Plaintiff testified that he drove a vehicle two or three times a week to doctor's appointments, physical therapy, and the store. [Tr. 74].

A vocational expert ("VE"), Christopher Rymond, also testified at the May 2019 administrative hearing. [Tr. 77-90]. After the VE described Plaintiff's past work, [Tr. 78-79], the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ. The VE testified that such an individual could perform Plaintiff's past work of feeder/off bearer (as actually performed) and production assembler (as actually and generally performed). [Tr. 80-81, 87-89]. The VE also testified in response to questioning from Plaintiff's counsel as to a hypothetical individual with limitations not contained within the ALJ's RFC finding as well as to additional questions from the ALJ. [Tr. 81-90].

In his subsequent decision, after a careful review of the record, the ALJ found that Plaintiff had severe impairments consisting of cervical degenerative disc disease; lumbar degenerative disc disease; right shoulder arthritis; and COPD with a history of smoking. The ALJ further found that Plaintiff's alleged headaches, carpal tunnel, ulnar nerve compression, and depression were not severe in that they did not have more than a minimal effect on his ability to perform basic work activities or

did not last more than 12 months. [Tr. 28-30: Finding No. 3]. The ALJ found that Plaintiff's impairments, singly and in combination, did not meet or equal the severity of a listed impairment. [Tr. 30: Finding No. 4].

The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform work activities consistent with a range of medium exertion work with additional specific and significant postural, manipulative, and environmental limitations. [Tr. 30-33: Finding No. 5]. The ALJ further found that Plaintiff's complaints of disabling limitations were not entirely consistent with the medical evidence and other record evidence as set forth in his June 2019 decision. [Tr. 31]. The ALJ found that Plaintiff retained the capacity to perform his past relevant work as a feeder/off bearer (as actually performed) and production assembler (as actually and generally performed). [Tr. 33: Finding No. 6]. Therefore, the ALJ found that Plaintiff was not disabled under the Act from the date of his alleged disability onset in June 2016 through the date of the Commissioner's final decision now before the Court. [Tr. 33: Finding No. 7].

## I. JUDICIAL REVIEW

The pertinent regulations provide ALJ's with broad authority to determine if a claimant is disabled under the Act, so the scope of judicial review is narrowly tailored to account for the ALJ's broad discretion. As the Supreme Court recently reiterated, "On

judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S.Ct. at 1157.

## II. DISCUSSION

Plaintiff contests the ALJ's decision on three related grounds. Specifically, Plaintiff argues that the ALJ did not properly evaluate the severity of his carpal tunnel and ulnar nerve compression, his RFC, and his capacity to perform his past relevant work. [DE 14-1, at 3-8]. But as discussed below, Plaintiff's associated arguments are unavailing.

7

In her justifiable decision, the ALJ, Kendra Kebler, provided an evaluation of the objective medical evidence and specifically discussed the medical record, including those records related to both Plaintiff's severe impairments and those justifiably deemed to be not severe, for the period between Plaintiff's alleged disability onset and the Commissioner's decision now before the Court. [Tr. 28-33: Finding Nos. 3, 5]. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (the decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence).

As noted above, Plaintiff presents three related and unsubstantiated challenges to the ALJ's consideration of his disability claim. Plaintiff has thus waived any arguments as to other issues not raised or argued with specificity in his brief. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation omitted)); *Stiltner v. Comm'r of Soc. Sec.,* 244 F. App'x 685, 686 (6th Cir. 2007) (unpublished) (arguments not included in the claimant's brief are waived).

8

Plaintiff's first challenge to the ALJ's decision is his claim that the ALJ should have considered his alleged carpal tunnel and ulnar nerve compression to be severe impairments at step two of the sequential evaluation. [DE 14-1, at 3-7]. This is a largely academic question because the ALJ found that Plaintiff had some severe impairments and continued in the sequential evaluation. *See Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. 2008) (unpublished) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.3d 240, 244 (6th Cir. 1987)); *see also Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) (unpublished) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). The finding of non-severity is not legally relevant because the ALJ went on to determine Plaintiff's RFC between steps three and four, and, at that point, was required to consider his severe and non-severe impairments. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . ."). In her June 2019 decision, the ALJ pointed out that this was exactly what she did. [Tr. 28, 29, 33].

Contrary to Plaintiff's conclusory argument, the ALJ did not restrict her factoring of non-severe impairments to Plaintiff's

carpal tunnel and ulnar nerve compression. [DE 14-1, at 7-8]. The ALJ's exact language belies Plaintiff's interpretation in that the ALJ specifically stated, "I have factored his non-severe impairments in the residual functional capacity." [Tr. 29]. The ALJ's statement in no way is restricted to consideration of the non-severe impairments of carpal tunnel and ulnar nerve compression but would also include the non-severe impairments of headaches and depression. Further, the ALJ's decision does not "suggest" that she intended to include further limitations in her reasonable RFC finding relative to carpal tunnel and ulnar nerve compression, as Plaintiff would like the Court to believe. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("[D]ecision must be affirmed if the [ALJ]'s findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.").

Moreover, contrary to Plaintiff's argument, the ALJ did not "misinterpret" or "mischaracterize" medical evidence. [DE 14-1, at 3-4]. In referencing the March 21, 2019, exam findings relative to Plaintiff's carpal tunnel and ulnar nerve compression, the ALJ specifically noted that "these impairments were generally mild per objective testing." [Tr. 29]. This is an accurate description of the referenced objective evidence that Plaintiff incorrectly maintains was mischaracterized. While it is true that an EMG study

noted in the March 21, 2019, record does indicate that compression of the ulnar nerve at the right elbow was electrophysiologically moderate, that same record also reflects, that on exam, Plaintiff's right elbow showed no visible deformity, had full active range of motion, and only mildly positive tinels at the cubital tunnel. [Tr. 2229]. The ALJ further pointed out that a January 2019 X-ray of Plaintiff's right wrist and elbow resulted in an impression of an essentially unremarkable examination. [Tr. 29; Tr. 2210]; *see also Biestek* 139 S. Ct. at 1154. ("It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (internal citation omitted); *Dyson v. Comm'r of Soc. Sec.,* 786 F. App'x 586, 588 (6th Cir. 2019) (unpublished) ("This court does not weigh evidence, assess credibility or resolve conflicts in testimony – that's the ALJ's job ."). Moreover, the ALJ noted that she had carefully considered the entire record in making her findings of fact and conclusions of law including her step two, RFC, and step four findings. [Tr. 28, 30: Finding No. 5]; *see also Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (finding that an ALJ's failure to cite to specific evidence does not indicate that it was not considered).

Nevertheless, the ALJ reasonably discussed relevant medical evidence, including that the alleged impairments were severe and that Plaintiff retained the RFC to perform a range of medium exertion work with additional specific and significant postural,

manipulative, and environmental limitations. [Tr. 28-33: Finding Nos. 3, 5]. Of significance, the ALJ then found that her RFC finding accounted for "reasonable limitations derived from the medical evidence of record and [Plaintiff's] testimony. . . ." [Tr. 33]; *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

Therefore, the ALJ reasonably found that the impairments at issue were not severe because they did not have more than a minimal effect on Plaintiff's ability to perform work activities. [Tr. 29]; *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987) (finding that the claimant bears the burden at step two of showing that he has a medically severe impairment or combination of impairments). Thus, the Court shall reject Plaintiff's step two argument.

The Commissioner submits that the ALJ provided a comprehensive three-page evaluation in support of her justifiable RFC finding that Plaintiff would be limited to work activity at the medium level of exertion with specific additional physical limitations. This reasonable RFC included inter alia a significant manipulative limitation of no more than occasional reaching overhead with the dominant right upper extremity. [Tr. 30-33: Finding No. 5].

Moreover, the ALJ noted that although consultative examining physician, Dr. Burchett, did not provide specific work-related limitations, his March 16, 2017, physical examination was largely unremarkable other than significant limitations in Plaintiff's right shoulder range of motion. [Tr. 32]. As relevant here, Dr. Burchett specifically noted that Plaintiff demonstrated normal grip strength, normal wrist and elbow range of motion, and no complaints of wrist or elbow pain. Dr. Burchett further noted that Plaintiff was able to write and pick up coins with either hand without difficulty, demonstrated normal 5/5 grip strength, and normal flexion extension of his elbows. [Tr. 436-441]; *see also Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("The district judge correctly decided that 'neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC.'").

In the making of her justifiable RFC finding, the ALJ thus provided a thorough and well-reasoned evaluation of the total record encompassing objective medical evidence, including the findings and opinions from treating sources, examining source opinions, and state agency medical consultants' opinions as well as Plaintiff's subjective complaints. [Tr. 30-33: Finding No. 5]. Because the ALJ's RFC finding is based on a reasonable interpretation of all the evidence, the Court must affirm regardless of whether Plaintiff can identify a different

interpretation. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (unpublished) (finding the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's RFC).

In his brief to the Court, Plaintiff does not adequately explain why the ALJ's assessment of his physical abilities was unreasonable considering the probative evidence set forth above. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled."); *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (the burden of proving disability lies with the claimant). Plaintiff's other criticisms of the ALJ's decision read more like an impermissible request to the Court to reweigh the evidence and adopt Plaintiff's reading of the record. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d at 389-90 ("[E]ven if the evidence could also support a different conclusion, the decision of the [ALJ] must stand if substantial evidence supports the conclusion reached."). Thus, Plaintiff's argument is not meritorious and does not detract from the ALJ's decision being supported by substantial evidence.

Additionally, substantial evidence supports the ALJ's finding that the record did not include objective findings or other record evidence that would support Plaintiff's argument that he was subject to disabling symptoms in total or specifically associated with his non-severe impairments of right carpal tunnel and ulnar

nerve compression. [Tr. 31-33]. The ALJ's analysis of Plaintiff's symptom complaints is entitled to particular deference from this Court. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Moreover, Plaintiff's unsupported and conclusory argument that the ALJ improperly "attempted to discredit" his ulnar nerve compression and carpal tunnel by pointing out that he uses a computer and made shelves and other small items indicating manipulative abilities. [Tr. 29]. Plaintiff argues that these activities were "sporadic" which is contrary to his own statement that he "does use a computer a lot" nor does he provide any evidence that his woodworking was on a sporadic basis. Plaintiff specifically reported to a VA medical provider in January 2019 that he spends his time watching movies and making shelves and other small items. [Tr. 2360]. Plaintiff's argument is nothing more than conjecture in an attempt to diminish the extent of his relevant activities of daily living, including those specifically related to his alleged carpal tunnel and ulnar nerve compression. [DE 14-1, at 4-5]. *See Warner v. Comm'r of f Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.")

Further, the ALJ discussed relevant medical evidence, including the findings or opinions from Plaintiff's treating and examining physicians as well as state agency medical consultants,

in reasonably determining that Plaintiff's carpal tunnel and ulnar nerve compression did not constitute severe impairments and that he retained the RFC to perform physical activities associated with a range of medium exertion work with additional significant postural, manipulative, and environmental limitations. [Tr. 28-33: Finding Nos. 3, 5]; *see also Richardson v. Perales*, 402 U.S. at 399. As the ALJ found, Plaintiff's overall records through the date of the ALJ's decision detract from Plaintiff's claims of disabling symptoms. [Tr. 31, 33]; *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (unpublished) (finding an ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding).

Although not even required in the making of the ALJ's step four finding that Plaintiff retained the capacity to perform his past relevant work, the VE's relevant response was to a hypothetical from the ALJ that included all of the limitations found in the ALJ's fully supported RFC finding, as discussed above, from Plaintiff's alleged disability onset date of June 1, 2016, through the Commissioner's June 24, 2019, final decision now before the Court. [Tr. 33: Finding No. 6; Tr. 80-81, 87-89]. Thus, in the case before the Court, the VE's response constituted substantial evidence in support of the ALJ's finding that Plaintiff could perform work existing in significant numbers in the national

economy. [Tr. 33, 80-81, 87-89]; *see also Biestek v. Berryhill*, 139 S. Ct. at 1154 (2019) ("It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

In sum, the ALJ justifiably found that between Plaintiff's alleged disability onset date of June 1, 2016 and her June 24, 2019, decision, Plaintiff did not have work-related limitations beyond those accounted for by her reasonable RFC finding and her well-reasoned evaluation of Plaintiff's alleged impairments that is supported by substantial evidence.

Accordingly,

**IT IS ORDERED** as follows:

(1) The Commissioner's final decision be is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment [DE 14] is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment [DE 16] is **GRANTED;** and

(4) A judgment in conformity herewith shall this date be entered.

This the 5th day of August, 2021.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge